IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM "ALEX" ROUSE, | : | 1:20-cv-528 |
| Plaintiff, | : | |
| v. | : | Hon. John E. Jones III |
| HARLEY-DAVIDSON, INC. *et al.*, | : | |
| Defendants. | : | |

## **MEMORANDUM**

### **January 26, 2021**

Presently pending before the court is Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and to Apply North Carolina Law (the "Motion"). (Doc. 20). The Motion has been fully briefed, (Docs. 21, 26, 29), and is now ripe for our review. For the reasons that follow, the Motion shall be granted in part and denied in part.

### I.  BACKGROUND

This is a products liability action concerning the Harley-Davidson Electra Glide Classic FLT motorcycle (the "Electra Glide"). According to Plaintiff Alex Rouse, the Electra Glide "is known to have a propensity to develop a 'wobble' or a 'weave' at normal speeds and under conditions one would normally expect to find in highway driving." (Doc. 7 at ¶ 12). This propensity is, apparently, "well-known" to Harley-Davidson and is typically referred to as the "Harley-Davison

1

Wobble." (*Id.* at ¶¶ 12–13). Harley-Davidson has even issued instructions to customers on how to safely navigate through such a "wobble" when it arises. (*Id.* at ¶ 14). These instructions may not be sufficient to overcome the wobble, however, if the motorcycle is in traffic or driving around a curve or is otherwise in a situation where the rider does not have sufficient time or room to allow the wobble to self-correct. (*Id.* at ¶ 16).

Such is what allegedly happened to Plaintiff Alex Rouse. Plaintiff's father owns a 1999 Electra Glide, which was ostensibly manufactured and assembled in Harley-Davidson's York, Pennsylvania facility. (*Id.* at ¶¶ 17–18). On April 2, 2018, Plaintiff, a North Carolina resident, drove his father's motorcycle along Sweet Gum Church Road in Greenville, North Carolina, where his family maintains a horse barn. (*Id.* at ¶¶ 18–19). As Plaintiff drove around a curve, the wobble ensued. Plaintiff was unable to regain control of the trembling bike, and so he soon drifted out of the lane and then off the roadway entirely. (*Id.* at ¶¶ 20–22). Plaintiff was thrown from the motorcycle, and he slid across the asphalt, leaving him "severely injured and barely conscious." (*Id.* at ¶ 23).

Plaintiff initiated this action on April 1, 2020, lodging a complaint against Defendant Harley-Davidson, Inc. and seven other Harley-Davidson entities and/or subsidiaries (collectively, "Harley-Davidson" or "Defendants"). (Doc. 1). On June 18, 2020, Plaintiff filed the now-operative Amended Complaint, which, *inter*

2

*alia*, dropped as a defendant one of the Harley-Davidson corporate entities. (Doc. 7). The Amended Complaint brings six causes of action: strict liability (Count I), "negligence/recklessness" (Count II), "gross negligence/recklessness" (Count III), unfair and deceptive trade practices (Count IV), fraud (Count V), and breach of express and/or implied warranty (Count VI). (*Id.* at ¶¶ 35–74). Defendants answered the Amended Complaint on July 2, 2020. (Doc. 10).

Defendants filed the motion *sub judice*, along with a brief in support, on November 16, 2020. (Docs. 20, 21). Defendants ask us to transfer this action to the Eastern District of North Carolina pursuant to 28 U.S.C. § 1404(a) and to issue an order declaring that North Carolina law governs Plaintiff's claims. (Doc. 20 at ¶ 20). Plaintiff filed his brief in opposition to the Motion on December 7, 2020, (Doc. 26), and Defendants filed a reply brief on December 21, (Doc. 29). Accordingly, the Motion is ripe for adjudication.

## II. STANDARD OF REVIEW

A court may transfer venue to any other district court where the civil action might have been brought if it serves the interests of justice and the convenience of the parties. 28 U.S.C. § 1404(a). Although the district court is given the ultimate discretion in transferring venue, the exercise of this discretion should not be liberal. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

3

A court adjudicating a motion pursuant to 28 U.S.C. § 1404(a) must first determine whether the proposed venue is appropriate—that is, a district court can only transfer the action to a district or division "where [the case] might have been brought." 28 U.S.C. § 1404(a); *see also High River Ltd. P'ship v. Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 491 (M.D. Pa. 2005). If transfer to the proposed district would satisfy this statutory limitation, the court must then balance several factors. "While there is no definitive list of factors, courts generally consider the following: (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) where the claim arose; (4) the convenience of the parties; ([5]) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; ([6]) the location of books and records, similarly limited to the extent that the files could not be produced in the alternative forum; ([7]) the enforceability of the judgment; ([8]) practical considerations that could make the trial easy, expeditious, or inexpensive; ([9]) the relative court congestion in the competing courts; ([10]) the local interest in deciding local controversies at home; ([11]) the public policies of the fora; ([12]) and the familiarity of the trial judge with the applicable state law." *Id.* (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995)).

The moving party bears the burden of showing that these factors warrant transfer. *Jumara*, 55 F.3d at 879. However, the moving party "is not required to

4

Case 5:21-cv-00039-FL   Document 30   Filed 01/26/21   Page 4 of 20

show 'truly compelling circumstances for . . . change . . . [of venue, but rather that] all relevant things considered, the case would be better off transferred to another district.'" *In re United States*, 273 F.3d 380, 388 (3d Cir. 2001) (quoting *In re Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995)).

## III. DISCUSSION

Defendants argue that transfer to the Eastern District of North Carolina is warranted because nearly every fact alleged in the Amended Complaint is connected to North Carolina rather than Pennsylvania. For instance, Plaintiff is a citizen of North Carolina, the motorcycle—which was purchased, serviced, and repaired exclusively in North Carolina—crashed in North Carolina and is still located there, and Plaintiff's medical treatment following the crash occurred in a North Carolina hospital. Accordingly, we initially conclude—and the parties do not dispute—that this case could have been brought in the Eastern District of North Carolina because a substantial part of the events giving rise to the claim occurred there. *See* 28 U.S.C. § 1391(b)(2). Pursuant to 28 U.S.C. § 1404(a), the Eastern District of North Carolina is therefore an appropriate district for which to transfer this matter.

There is one key allegation, however, that forecloses a straightforward analysis of this motion: Plaintiff alleges that the motorcycle was "manufactured and assembled" by Defendants in their York, Pennsylvania manufacturing and

5

assembly facility.  (Doc. 7 at ¶ 17).  Defendants argue that Plaintiff's allegations pertain solely to the design of the motorcycle—and so the manufacture and assembly of this specific bike are irrelevant—and deny that any design decisions regarding the motorcycle were made in Pennsylvania.  (Doc. 21 at 14).  Plaintiff rejects this characterization of his Amended Complaint, and points to Paragraph 38, where he pleads, in part, that Defendants are strictly liable for "[f]ailing to properly and adequately manufacture the Motorcycle."  (Doc. 7 at ¶ 38).  Plaintiff argues that "the crux of [his] products liability claims arose when the defective motorcycle came off the assembly line in the Middle District [of Pennsylvania]."  (Doc. 26 at 7).

Considering the stage of these proceedings—Defendants have already answered the Amended Complaint and only ask us to transfer this case and/or order that North Carolina law should govern it—we deem it imprudent to analyze the factual or legal sufficiency of the pleadings here.  Whether any design decisions regarding the 1999 Electra Glide were actually made in Pennsylvania is a matter for summary judgment or trial.  Likewise, without any evidence before us, it would be inappropriate to speculate which theory of products liability Plaintiff will ultimately adopt in pursuing the remainder of this action.  It is sufficient for present purposes to simply observe that the operative complaint alleges (however conclusory) both design and manufacturing defects in the 1999 Electra Glide.

Therefore, both the Middle District of Pennsylvania and the Eastern District of North Carolina would be appropriate venues for this case. With that in mind, we will proceed to an analysis of the twelve factors we must consider on a motion to transfer venue.

    A. <u>Private Interest Factors</u>

        *1) Plaintiff's Choice of Forum*

This first factor weighs in in favor of this action remaining in the Middle District of Pennsylvania, where Plaintiff originally filed. It is true, as Defendants argue, that courts typically give less deference to the Plaintiff's choice of forum when "the vast majority of events that gave rise to the instant action" took place in a different forum. *J.L. Souser & Assocs., Inc. v. J&J Snack food Corp.*, No. 06-CV-2043, 2007 WL 1217690, at *3 (M.D. Pa. Apr. 24, 2007) (citing *Cameli v. WNEP-16 the News Station*, 134 F. Supp. 2d 403, 405 (E.D. Pa. 2001)). It is also the case that the plaintiff's choice of form is typically entitled to less deference "[w]hen a plaintiff files suit outside of the plaintiff's home forum[.]" *McCraw v. GlaxoSmithKline*, No. CIV.A. 12-2119, 2014 WL 211343, at *4 (E.D. Pa. Jan. 17, 2014). Defendants argue that "Plaintiff's forum choice should not be given *any* weight," (Doc. 21 at 14–15) (emphasis added), but we disagree with that assertion. First, Defendants' argument that "[n]one of the acts that gave rise to Plaintiff's claim arose in the Middle District of Pennsylvania," (*Id.* at 13), is not necessarily

7

accurate. While the parties dispute whether any design decisions were made in the Middle District of Pennsylvania, Plaintiff unquestionably alleges that the motorcycle was manufactured and assembled in York. (Doc. 7 at ¶ 17). Second, even if less deference to Plaintiff's choice of forum than usual is warranted, given that Plaintiff is a resident of North Carolina rather than Pennsylvania, this does not mean that Plaintiff's original choice of forum is entitled to *no* deference. Because Plaintiff filed this action in the Middle District of Pennsylvania, this first factor still weighs against transfer, albeit less than it would if Plaintiff were a Pennsylvania resident. *See Trias v. QVC, Inc.*, No. CV 20-813, 2020 WL 2769585, at *2 (E.D. Pa. May 28, 2020) ("Although Plaintiff filed suit outside of her home forum of South Dakota, this factor still weighs against transfer.").

### 2) Defendants' Forum Preference

Because Defendants have moved for transfer to the Eastern District of North Carolina, one would presume this factor weighs in favor of a transfer. But this factor "in reality does little more than frame the issue, because there would be no motion to transfer *unless* the defendant prefers a different forum. *Edwards v. Equifax Info. Servs.*, LLC, 313 F. Supp. 3d 618, 622 (E.D. Pa. 2018) (emphasis in original). This second factor is therefore neutral.

### 3) Whether the Claim Arose Elsewhere

As we have discussed, the parties vigorously dispute this factor. While most of the facts alleged in Plaintiff's Amended Complaint did occur in North Carolina,

8

we have already rejected Defendants' assertion that "[n]one of the acts that gave rise to Plaintiff's claim arose in the Middle District of Pennsylvania," (Doc. 21 at 13). Plaintiff points to Judge Kenney's analysis in *Trias*, where he observed that "in many products liability cases . . . the location of the accident will be relatively unimportant for venue purposes." *Trias*, 2020 WL 2769585, at *3 (quoting *Lempke v. Gen. Elec., Co.*, No. 10-cv-5380, 2011 WL 3739499, at *4–5 (E.D. Pa. Aug. 25, 2011)). Therefore, Plaintiff argues that because this is a products liability action, "the root of Plaintiff's claim arose in the Middle District," where the motorcycle was assembled, despite the fact that the crash occurred in North Carolina. (Doc. 26 at 8).

We agree with Defendants, however, that *Trias* does not provide much support for Plaintiff's position. *Trias* was a products liability action concerning small magnets swallowed by a child in South Dakota. *Trias*, 2020 WL 2769585, at *1. The *Trias* plaintiff filed suit in the Eastern District of Pennsylvania, where the defendant's headquarters was located. *Id.* Judge Kenney observed that the facts alleged by plaintiff touched both fora—the product was swallowed in South Dakota, where the plaintiff received medical care, but the defendants had made the decision to sell and promote the product in Pennsylvania. *Id.* at *3. Because "[n]either party [had] shown that there would be significant physical evidence from the site of the alleged accident," Judge Kenney concluded that "the physical

9

location of the accident carrie[d] less weight" than the defendant had argued. *Id.* Judge Kenney ultimately concluded that this third factor was therefore neutral. *Id.*

Unlike *Trias*, we find here that the location of the accident is an especially relevant consideration for this third factor, even though Plaintiff has alleged a products liability action. In *Trias*, the specific product swallowed by the child was not crucially important, as it was identical to the other versions of the same product produced by defendant. But the condition of the specific motorcycle (currently located in North Carolina, where it has been serviced exclusively) involved in Plaintiff's accident is quite relevant in this case to apportion fault. Further, the location of the accident here absolutely matters—no party in *Trias* alleged that significant physical evidence remained in South Dakota, while Defendants here argue that the physical location of the accident is especially important. As Defendants correctly observe, "[t]his is not a case where a fixed characteristic of a product clearly caused an injury, as in *Trias*." (Doc. 29 at 7). Rather, it is quite possible that factors such as the conditions of the roadway, Plaintiff's speed, or the manner in which Plaintiff handled the curve of the road contributed to the accident.

Ultimately, we conclude that because much of this litigation will likely focus on the events that occurred on April 2, 2018, on that North Carolina roadway, this factor weighs in favor of transfer to the Eastern District of North Carolina. We agree with Plaintiff that in many products liability cases, the location of the

10

accident may not be important, but that is not the case here. *See Blankenship v. Graco Children's Prod., Inc.*, No. CIV.A. 11-04153, 2011 WL 4712419, at *3 (E.D. Pa. Oct. 6, 2011) ("I agree that in many products liability cases, the location of the accident may be unimportant in establishing proper venue. However, the record in this case suggests that the site of the accident is likely to be particularly important as this litigation proceeds."). There are a number of events and circumstances that predicated the April 2, 2018 crash and this subsequent litigation—while one of the first of these events (the assembly of the motorcycle) allegedly occurred in Pennsylvania, the vast majority thereafter, if not all of them, took place in North Carolina. Accordingly, this factor weighs in favor of transfer.

    *4) Convenience of the Parties*

 The Third Circuit has instructed district courts here to consider the respective burdens on the parties "as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 879. Considering the financial resources available to Defendants—Harley-Davidson is a publicly-traded, global corporation and one of the world's most recognizable motorcycle brands—we conclude that either fora would be equally convenient for them. While Plaintiff argues that he filed this action in the Middle District of Pennsylvania "with full knowledge of the distance from his home in North Carolina," it would defy common sense to conclude that this district, hundreds of miles away, would somehow be more

11

convenient for him than a court in his home state. Therefore, this factor must weigh in favor of transfer to the Eastern District of North Carolina.

*5) Convenience of Potentially Unavailable Witnesses*

This fourth private-interest factor focuses on the relative convenience for potential witnesses "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Id.* Defendants argue that "all key witnesses" are located in North Carolina, (Doc. 21 at 15), while Plaintiff argues that "because this is a products liability case, the majority of Plaintiff's trial witnesses will be corporate employees of Defendants located in Wisconsin, as well as current and former employees of Defendants' facility in the Middle District," (Doc. 26 at 9). Neither party, however, has specifically identified any witnesses, nor have they demonstrated that any witnesses would actually be unavailable for trial. *See Dariz v. Republic Airline Inc.*, 377 F. Supp. 3d 499, 504 (E.D. Pa. 2019) ("To the extent that some witnesses are former employees, Republic has not provided evidence that they would actually be unavailable for trial if the case were to remain in the Eastern District of Pennsylvania[], and thus although this factor may weigh in favor of transfer, it does so only slightly."). No matter the forum in which this case proceeds, certain witnesses, if unavailable for trial, would be out of the court's subpoena power. Therefore, this factor is neutral.

### *6) Location of Books and Records*

The final private-interest factor likewise does not weigh in favor of transfer. Defendants allege, by reference to an affidavit by a Harley-Davidson employee, that the Harley-Davidson plant where the 1999 Electra Glide was manufactured was replaced by a newer factory and therefore no longer exists, and so there cannot be any relevant documents concerning the motorcycle in Pennsylvania. (Doc. 29 at 9). Even if this is true—and we express no opinion on the veracity of the affidavit—today "the location of documents is entitled to little weight when considering a motion to transfer venue" due to "the advent of photocopying and the easy accessibility to copies" of documents. *Keller-Miller v. Coca-Cola Bottling Co.*, No. CV 16-03018, 2016 WL 5870897, at *4 (E.D. Pa. Oct. 7, 2016) (quoting *Howell v. Shaw Industries*, No. CV 93-2068, 1993 WL 387901, at *11 (E.D. Pa. Oct. 1, 1993); *see also Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 200 (E.D. Pa. 2008) ("This factor should thus be limited to the extent that the files could not be produced in the alternative forum.") (citing *Jumara*, 55 F.3d at 879); *Lomanno v. Black*, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003) ("[T]he technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis."). Accordingly, this factor is neutral.

B. <u>Public Interest Factors</u>

*1) Enforceability of the Judgment*

Neither party has advanced an argument as to the enforceability of a judgment handed down in either fora. Indeed, there "is no question that a judgment could be enforced in both the Middle District of Pennsylvania and the Eastern District of [North Carolina]." *Penn Warranty Corp. v. Edwards*, No. 3:17-CV-01860, 2018 WL 994669, at *5 (M.D. Pa. Feb. 21, 2018). There being "no need to transfer this case to ensure a judgment is enforced," *id.*, this factor is neutral.

*2) Practical Considerations to Ensure an Expeditious Trial*

Defendants present a compelling practical consideration that could help ensure a more convenient trial if held in North Carolina: because the crash site is in North Carolina, in addition to the motorcycle itself, and because the site of the accident and surrounding environment could be critical in apportioning liability (especially in a single-rider accident), a jury would benefit from visiting the crash site in North Carolina. (Doc. 21 at 15, 17–18). Plaintiff argues that because we have already issued a case management order setting discovery and motion deadlines and a trial term, (Doc. 17), a transfer to the Eastern District of North Carolina "has the potential to severely lengthen these deadlines resulting in prejudice to the Plaintiff." (Doc. 29 at 11).

14

On balance, we conclude this factor weighs in favor of transfer. Though we have already set certain case management deadlines, we find it highly unlikely that the transferee court, to the extent it would issue new deadlines, would set a schedule so much lengthier than present that prejudice to either party would result. Further, as Defendants have persuasively argued, the crash site will likely be a prominent feature of the trial if this case should advance to that stage. Especially because Plaintiff was the lone driver on the road at the time and was negotiating a curve when the wobble allegedly started, it is easy to imagine the benefits of a jury visit to the location of the crash. Such would be eminently feasible if the trial were in North Carolina rather than Harrisburg, Pennsylvania. *See J.L. Souser & Assocs., Inc.*, 2007 WL 1217690, at *4 ("As such viewing . . . may be needed, and as the logistics associated therewith would be simplified were the case tried in the [transferee district], we find this public interest factor to weigh in favor of transferring this action."). Even if a jury visit is deemed unwarranted, it is apparent that most, if not all, of the witnesses who would testify about the crash, Plaintiff's injuries, and the history and condition of the specific motorcycle will be North Carolina residents. We find these practical considerations compelling and conclude that a trial in North Carolina would likely be overall much more convenient and expeditious for all relevant parties. This factor therefore weighs in favor of transfer.

15

Case 5:21-cv-00039-FL   Document 30   Filed 01/26/21   Page 15 of 20

### *3) Administrative Difficulties or Court Congestion*

Defendant argues that case management statistics "reveal[] there is not a significant difference between the number of cases in the Middle District of Pennsylvania and the Eastern District of North Carolina."  (Doc. 21 at 18). Though Defendant frames this as supporting transfer—since transfer "will not significantly burden" the transferee court or "create unnecessary congestion," (*Id.*)—we do not place much weight on this factor.  *See York Grp., Inc. v. Pontone*, No. CIV.A. 10-1078, 2014 WL 3735157, at *13 (W.D. Pa. July 28, 2014) ("Court congestion is not a decisive factor; it must be weighed against all other relevant factors, and district courts within the Third Circuit have not placed 'great importance' on this factor.") (citations omitted); *High River Ltd. P'ship*, 353 F. Supp. 2d at 499 ("Given that the Southern District of New York is clearly more convenient for the parties and witnesses in this case, the fact that court congestion is less in the Middle District of Pennsylvania is not enough alone to continue with the action in this district."); *Penda Corp. v. STK, LLC*, Civ. A. No. 03–5578, 2004 WL 2004439, at *3 (E.D. Pa. Sept.7, 2004) ("Although the relative congestion of court dockets may be evaluated in a motion to transfer, it generally is not a factor worthy of great weight.").  Because Defendants have not presented evidence of any considerable administrative burden in either court that would hinder a speedy trial, this factor is neutral.

### 4) Local Interest

The fourth public-interest factor entails consideration of "the local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879. We find that both Pennsylvania and North Carolina have an interest in deciding the issues in this case. Plaintiff is a North Carolina resident involved in a crash on a North Carolina road. The motorcycle, however, was manufactured and assembled in Pennsylvania, where Defendants continue to manufacture and assemble motorcycles to this day. Because there is a local interest in this case for both states, this factor is neutral.

### 5) Public Policies of the Fora

Defendants argue that this fifth public-interest factor weighs in favor of transfer to North Carolina because the state's twelve-year statute of repose is directly implicated. Because the North Carolina legislature intended to limit a manufacturer's liability for potentially-defective products after twelve years have elapsed since initial purchase or consumption, that policy is "directly dispositive" and supports transfer to a judicial forum in that state. (Doc. 29 at 10–11). Plaintiff, on the other hand, argues that Pennsylvania has an equally "strong policy interest in adjudicating the instant matter," as evidenced by the *lack* of a similar statute of repose. (Doc. 26 at 11). In other words, "Pennsylvania's refusal to enact a statute of repose in products liability cases could suggest that the Pennsylvania

legislature aimed to ensure that the Commonwealth was not a safe haven for corporations to insulate themselves from liability after a certain amount of time passed." (*Id.*).

There are issues with each of these arguments, however. First, we hesitate to infer declarations of public policy through a legislature's silence, and Plaintiff has not submitted any citations or evidence that directly indicate a Pennsylvania public policy that would be furthered by keeping this case in the Middle District. Second, and more importantly, we have yet to determine which state law applies in this matter. And a federal judge presiding in North Carolina, should this case be transferred, would still need to apply a Pennsylvania choice-of-law analysis; a transfer will not guarantee that North Carolina law will ultimately apply in this case. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) ("We conclude, therefore, that in cases such as the present, where the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms."). Because it is not yet certain which state law will govern the dispute, it is equally uncertain which state's public policy interests will be implicated. This factor must therefore remain neutral.

18

Case 5:21-cv-00039-FL    Document 30    Filed 01/26/21    Page 18 of 20

### 6) *Familiarity with Applicable State Law*

As we have just observed, a Pennsylvania choice-of-law analysis will be undertaken regardless of which forum will ultimately host this case. This means that for "whatever weight [we] might have given to the public-interest factor that looks to the familiarity of the transferee court with the applicable law," such weight must be "reduce[d]." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 67 (2013). "[I]n any event, federal judges routinely apply the law of a State other than the State in which they sit." *Id.* This final factor is therefore neutral.

## IV. CONCLUSION

After careful consideration of all twelve public- and private-interest factors pursuant to *Jumara*, we conclude that transfer to the Eastern District of North Carolina is warranted. Nearly every factor either weighs in favor of transfer or is neutral—the lone factor that militates *against* transfer is the second private-interest factor, which considers Plaintiff's original choice of forum. But as we have discussed, this factor carries less significance when the plaintiff is not at-home in the original forum, as is the case here. We are sufficiently persuaded that Defendants have met their burden and have shown that, all things considered, the case would be more fittingly adjudicated in the Eastern District of North Carolina. *See Jumara*, 55 F.3d at 879 (noting that courts should consider whether "on

19

Case 5:21-cv-00039-FL    Document 30    Filed 01/26/21    Page 19 of 20

balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.") (citation omitted).

Because we will order this case transferred, we need not reach the second part of Defendants' motion regarding which state law should govern this action. We find it imprudent to decide such a critical—and in this case, dispositive—issue on behalf of the assuredly competent judge who will soon be responsible for resolving this case moving forward. We will therefore grant in part and deny in part the Motion.

A separate order shall issue in accordance with this ruling.