IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:21-CV-39-FL

| | |
|---|---|
| WILLIAM ALEX ROUSE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| HARLEY-DAVIDSON, INC.; HARLEY ) | |
| DAVIDSON MOTOR CO., INC.; ) | |
| HARLEY-DAVIDSON MOTOR ) | ORDER |
| COMPANY OPERATIONS, INC.; ) | |
| HARLEY-DAVIDSON MOTOR ) | |
| COMPANY, INC.; HARLEY-DAVIDSON ) | |
| MOTOR CO.; HARLEY-DAVIDSON ) | |
| MOTOR COMPANY GROUP, LLC; and ) | |
| HARLEY-DAVIDSON MOTOR ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on motion to dismiss (DE 47) by defendant Harley-Davidson Motor Company Group, LLC ("Harley-Davidson").[1] The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motion is granted.

**STATEMENT OF THE CASE**

Plaintiff commenced this products liability action against defendants on April 1, 2020, in the United States District Court for the Middle District of Pennsylvania, for damages arising from

---

[1] Defendant Harley-Davidson asserts in its motion that it was "incorrectly sued as 'Harley-Davidson, Inc., Harley Davidson Motor Co. Inc., Harley-Davidson Motor Company Operations, Inc., Harley-Davidson Motor Company, Inc., Harley-Davidson Motor Company and Harley-Davidson Motor Co.'" (DE 47 at 1). Plaintiff treats all defendants as a group in response to the motion. (See, e.g., DE 49 at 1-4). The court thus construes the instant motion as seeking dismissal on behalf of all named defendants.

a single-rider motorcycle accident in North Carolina involving a Harley-Davidson motorcycle (the "motorcycle"). In the operative amended complaint, filed June 18, 2020, plaintiff asserts claims and theories of recovery related to defendants' alleged "design, manufacture, assembly, sale, testing, marketing, labeling, advertising, promotion and/or distribution" of the motorcycle. (Compl. (DE 7) ¶ 1).[2] Plaintiff seeks damages, including punitive damages, trebled damages, and attorneys' fees, as allowed, based on claims for strict liability, negligence, unfair trade practices, fraud, and breach of warranty.

On defendants' motion, the United States District Court for the District of Pennsylvania transferred the case to this district, by order and memorandum opinion entered January 26, 2021 (DE 30, 31). See Rouse v. Harley-Davidson, Inc., No. 1:20-CV-528, 2021 WL 254065, at *7 (M.D. Pa. Jan. 26, 2021). In transferring the case to this district, the court denied without prejudice portions of defendants' motion seeking a determination of which state law should govern, reasoning that it was "imprudent to decide such a critical—and in this case, dispositive—issue on behalf of the assuredly competent judge who will soon be responsible for resolving this case moving forward." Id.

Defendant Harley-Davidson filed the instant motion to dismiss on April 5, 2021, asserting that all of plaintiff's claims are barred by North Carolina's six year statute of repose, relying upon certified title records of the motorcycle. Defendant Harley-Davidson also seeks an award of attorneys' fees. Plaintiff timely responded in opposition, and defendant Harley-Davidson replied. Case scheduling activities have been stayed pending ruling on the motion.

---

[2] Hereinafter all references to the complaint and citations to "compl." are to the operative first amended complaint, filed June 18, 2020.

## STATEMENT OF THE FACTS

The facts alleged in the complaint may be summarized as follows. Defendants are "organized and existing under the laws of the State of Wisconsin." (Compl. ¶ 7). Defendant Harley-Davidson "designs, develops, tests, manufactures, assembles, advertises, labels, promotes, markets and sells motorcycles for civilian and police use." (Id. ¶ 10). "One of the motorcycles designed, developed, tested, manufactured, assembled, advertised, labeled, promoted, marketed and sold by Harley Davidson is known as the 'Electra Glide.'" (Id. ¶ 11).

According to the complaint, "[t]his type of motorcycle is known to have a propensity to develop a 'wobble' or a 'weave' at normal speeds and under conditions one would normally expect to find in highway driving (the 'Harley-Davidson Wobble')." (Id. ¶ 12). This propensity allegedly is "well-known to Harley-Davidson for it has received numerous complaints about persons being injured or killed as a result of the Harley-Davidson Wobble." (Id. ¶ 13).

Harley-Davidson allegedly has "issue[d] instructions advising its customers on how to deal with the Harley-Davidson Wobble when it occurs." (Id. ¶ 14). According to the complaint, "Harley-Davidson instructs its customers that when the wobble occurs, they should relax their grip on the handlebars, not apply brakes and wait until the wobble ends." (Id. ¶ 15). Harley Davidson allegedly "has advised its customers that if these instructions are followed, these motorcycles may be safely used." (Id. ¶ 16).

According to the complaint, "Harley Davidson's instructions are only useful if the Harley-Davidson Wobble occurs under certain circumstances, such as where the rider has enough room to allow the wobble to self-correct." (Id. ¶ 16). Allegedly, "[i]f the Harley Davidson Wobble occurs when the motorcycle is in traffic or in a curve, or both, it can cause a crash to occur, resulting in serious injury or death." (Id.).

3

The motorcycle at issue in the instant case was a 1999 Electra Glide Classic motorcycle, "manufactured and assembled by [d]efendants at [their] manufacturing and assembly facility in York, Pennsylvania." (Id. ¶¶ 17-18). According to the complaint, defendants knew or should have known that the "motorcycle could be sold, loaned, leased or transferred in some other way to a party other than the first user and/or purchaser." (Id. ¶ 41).

Plaintiff is a citizen and resident of Pitt County, North Carolina. "During the early afternoon hours of April 2, 2018, [p]laintiff was operating [the motorcycle], owned by and registered to William Allen Rouse, [p]laintiff's father." (Id. ¶ 18). "Plaintiff was traveling east on Sweet Gum Church Road (SR 1519) near Greenville, North Carolina; he was on his way to the family's horse barn located just a short distance away on Oakley Road to feed his family's horses." (Id. ¶ 19). "As [p]laintiff was negotiating a curve, he started to experience the Harley Davidson Wobble." (Id. ¶ 20). "Plaintiff was unable to re-gain control of the motorcycle once the Harley-Davidson Wobble began." (Id. ¶ 21). "This caused Plaintiff to travel left of center and ultimately caused him to run off the roadway." (Id. ¶ 22).

"Plaintiff was thrown from [the] motorcycle and slid along the asphalt roadway until he came to rest on the left side of Sweet Gum Church Road (SR 1519), severely injured and barely conscious." (Id. ¶ 23). The motorcycle "continued to slide along the roadway until it reached the grassy shoulder across the road where it struck the ditch and flipped, finally coming to rest on the right shoulder of Sweet Gum Church Road (SR 1519)." (Id. ¶ 24). According to the complaint, "[a]s a result of the wobble induced collision, [p]laintiff suffered painful, disabling, and permanent injuries, scarring and disfigurement," further described in the complaint. (Id. ¶ 25).

4

**COURT'S DISCUSSION**

A.  Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider " legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[3]

B.  Analysis

Defendant moves to dismiss plaintiff's action on the basis of North Carolina's six-year statute of repose, N.C. Gen. Stat. § 1-50(a)(6). In opposition, plaintiff argues that North Carolina law does not apply, and that the court should instead apply Pennsylvania law, which does not have a statute of repose for products liability claims. In addition, plaintiff argues that the statute of repose does not bar all of his claims. The motion thus raises a threshold issue regarding the law applicable to plaintiff's action, to which the court now turns.

"[I]n cases such as the present, where the defendants [sought] transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue." Van Dusen v. Barrack, 376 U.S. 612, 639 (1964). "[T]he law applicable to a diversity case does not change upon a transfer initiated by a defendant." Ferens v.

---

[3]  Throughout this order, internal quotations and citations are omitted from all citations, unless otherwise specified.

John Deere Co., 494 U.S. 516, 523 (1990). Accordingly, where this action was commenced originally in Pennsylvania, the court must apply Pennsylvania choice of law rules to determine the substantive law applicable to plaintiff's claims. See id.; Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

Under Pennsylvania law, choice of law analysis proceeds in three steps. First, the court must determine whether there is "an actual . . . conflict between the potentially applicable laws." Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3d Cir. 2007). Second, if a conflict exists, the court must "examine the governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or an 'unprovided-for' situation," with a "true conflict" existing "only if both jurisdictions' interests would be impaired by the application of the other's laws." Id. Third, and finally, "[i]f a true conflict exists, the Court must then determine which state has the greater interest in the application of its law." Id. at 231. This requires a "combination of the approaches of both the Restatement II (contacts establishing significant relationships) and interests analysis (qualitative appraisal of the relevant States' policies with respect to the controversy)." Id. The court addresses each step in turn below.

    1.    Actual Conflict

In this case, the first step is satisfied because the laws of Pennsylvania and North Carolina differ with respect to their statutes of repose. North Carolina has enacted a statute of repose that provides: "No action for the recovery of damages for personal injury, death, or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than 12 years after the date of initial purchase for use or consumption." N.C. Gen. Stat. § 1-46.1(1). A prior version of this statute in effect before October 1, 2009, was identical

6

except that it provided a period of "six years" instead of "12 years." N.C. Gen. Stat. § 1-50(a)(6) (1999); see 2009 North Carolina Laws S.L. 2009-420 (S.B. 882).

Pennsylvania has not adopted a statute of repose for products liability claims. See 42 Pa. Stat. and Cons. Stat. Ann. § 5536 (providing twelve year statute of repose limited to construction and real property improvements). Accordingly, there is "an actual . . . conflict between the potentially applicable laws." Hammersmith, 480 F.3d at 230.

2. Real vs. False Conflict

Here, the second step is satisfied because both Pennsylvania and North Carolina have interests in application of their respective laws regarding products liability claims. On the one hand, Pennsylvania has an "interest in deterring the manufacture of defective products and in shifting the costs of injuries onto producers" that is served by applying a "strict liability standard" not limited by a statute of repose. Lacey v. Cessna Aircraft Co., 932 F.2d 170, 188 (3d Cir. 1991). On the other hand, North Carolina has an interest in "shield[ing] . . . manufacturers of durable goods from 'open-ended' liability created by allowing claims for an indefinite period of time after the product was first sold and distributed." Tetterton v. Long Mfg. Co., 314 N.C. 44, 54 (1985). This serves to: "(1) establish an actuarially certain date after which no liability can be assessed; and (2) eliminate tenuous claims involving older products for which evidence of defective conditions may be difficult to produce." Id. This reflects a legislative "balancing competing interests to ensure a stable market for the manufacture of basic products." Id. at 58.

Plaintiff argues that the conflict of interest in this case is instead a "false" conflict because application of Pennsylvania law will not impair any North Carolina interests. This is so, plaintiff argues, because North Carolina's statute of repose was enacted to "shield North Carolina manufacturers" from open ended liability, and defendants are not North Carolina manufacturers.

7

(Pl's Mem. (DE 49) at 6). The premise of plaintiff's argument, however, is flawed. North Carolina's statute of repose is not limited in its application to North Carolina manufacturers. Rather, it applies without limitation to all manufacturers, as well as all sellers of products. See N.C. Gen. Stat. § 1-50(a)(6)(1999); N.C. Gen. Stat. § 1-46.1(1); Tetterton, 314 N.C. at 50 (stating the statute "was meant and intended to apply to manufacturers and retail sellers alike"). Indeed, North Carolina courts have applied the statute of repose equally to domestic and foreign manufacturers. See, e.g., Robinson, 209 N.C. App. at 315 (Illinois manufacturer); Cacha v. Montaco, Inc., 147 N.C. App. 21, 23 (2001) ("remote manufacturer"); Davidson v. Volkswagenwerk, A.G., 78 N.C. App. 193, 195 (1985) (foreign manufacturer).

Likewise, the interests described by the North Carolina Supreme Court in Tetterton are not limited to shielding North Carolina manufacturers. Rather, interests served by enactment of the statute of repose include market stabilization, elimination of tenuous claims, and actuarial certainty to facilitate "insurance protection," all comprising a balancing of "competing interests" in the public good. 314 N.C. at 54, 57-58; see also Bolick, 306 N.C. at 366 (stating that the statute of repose "is a substantive change in the conditions precedent to a cause of action"). Furthermore, the United States Court of Appeals for the Fourth Circuit has recognized that "[s]tatutes of repose are based on considerations of the economic best interests of the public as a whole and are substantive grants of immunity based on a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists." First United Methodist Church of Hyattsville v. U.S. Gypsum Co., 882 F.2d 862, 866 (4th Cir. 1989) (emphasis added).

Plaintiff cites to Mitchell v. Lone Star Ammunition, Inc., 913 F.2d 242, 249-50 (5th Cir. 1990) for the proposition that North Carolina enacted its statute of repose "to shield North Carolina

manufacturers from open-ended liability." Id. Mitchell, however, relies in turn upon Tetterton for this proposition, which does not so limit its discussion of North Carolina interests in enacting its statute of repose. Tetterton, 314 N.C. at 50, 57-58. In any event, Mitchell is inapposite because there the court refused to apply the North Carolina statute of repose "to eliminate the claims of foreign plaintiffs against foreign defendants." Id. (emphasis added). In that case, none of the plaintiffs were residents of North Carolina. Id. at 249. Plaintiff's similar reliance upon Lacey, 932 F.2d at 188, is unavailing because the court there declined to apply the law of British Columbia to claims brought by a plaintiff who was not a citizen of British Columbia. Id. at 172.

In sum, the conflict in this case is a "true conflict," existing where "both jurisdictions' interests would be impaired by the application of the other's laws." Hammersmith, 480 F.3d at 230.

    3.    Greater Interest

The court turns next to an evaluation of which state has "the greater interest in the application of its law." Hammersmith, 480 F.3d at 230 (3d Cir. 2007). As part of this evaluation, the court examines first the following Restatement II contacts establishing significant relationships:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.

Blakesley v. Wolford, 789 F.2d 236, 239 (3d Cir. 1986) (quoting Restatement (Second) of Conflict of Laws § 145). "In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless . . . some other state has a more

significant relationship . . . [to] the occurrence and the parties, in which event the local law of the other state will govern." Id.

Here, the place where the injury occurred is North Carolina. (Compl. ¶ 23). The place where part of the alleged conduct causing the injury occurred, the manufacture and assembly of the motorcycle, is Pennsylvania. (Id. ¶¶ 17-18). While plaintiff asserts in the complaint that other conduct also caused his injury, including defective design of the motorcycle and inadequate warnings, (Id. ¶¶ 1, 15, 38, 41, 42, 44, 47, 49, 54), plaintiff does not allege sufficient facts to infer that the time or place of such additional conduct was in Pennsylvania.

Residency and place of business of the parties is mixed. Plaintiff is a citizen and resident of North Carolina. (Id. ¶ 6). He was operating the motorcycle "owned by and registered to" plaintiff's father, in 2018, "on his way to the family's horse barn . . . to feed his family's horses," in North Carolina. (Id. ¶ 19). Defendant has a manufacturing and assembly facility in Pennsylvania, and it is "organized and existing under the laws of the State of Wisconsin." (Id. ¶ 7, 17). The limited foregoing allegations also bear on where the relationship between the parties is centered. Plaintiff does not allege any communications between himself, or his father, and defendants. The only alleged location of use and ownership of the motorcycle is in North Carolina.[4] Therefore, the parties' relationship, to the extent it exists, is centered in North Carolina.

In sum, the balance of Restatement II contacts establishing significant relationships favors North Carolina. At this juncture, in this "action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties," and it is not the case

---

[4] Defendants attach to their memorandum in support of motion to dismiss documents purporting to show the certified chain of title of the motorcycle. (DE 48-1). Where the instant motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court excludes these documents from consideration.

that some "other state has a more significant relationship" to the occurrence and the parties. Blakesley, 789 F.2d at 239.

The court turns next to consider the second prong of the Pennsylvania interests analysis, which is a "qualitative appraisal of the relevant States' policies with respect to the controversy." Hammersmith, 480 F.3d at 230. "This analysis requires more than a mere counting of contacts." Id. at 231. "Rather, [the court] must weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the particular issue." Id. "Pennsylvania choice-of-law rules call for the application of the law of the state having the most significant contacts or relationships with the particular issue." Budget Rent-A-Car Sys., Inc. v. Chappell, 407 F.3d 166, 170 (3d Cir. 2005).

Here, the court has already outlined interests of Pennsylvania and North Carolina with respect to the issue of statutes of repose for products liability claims. (See section B.2., above). The court incorporates herein that analysis by reference. The court augments that discussion now in considering how those interests relate to the parties' contacts with Pennsylvania and North Carolina. In this case, the most significant contacts and relationships to the statute or repose issue are centered in North Carolina. Notably, plaintiff does not allege any direct contacts or communications with Pennsylvania on the part of himself or his father, nor any other user of the motorcycle. Plaintiff does not allege he or his father engaged in any sales transactions taking place in Pennsylvania, and the complaint suggests to the contrary. (See, e.g., Compl. ¶ 41).

In assessing North Carolina's interest in application of the statute of repose, the court also notes that findings pertinent to change of venue also demonstrate the significance of contacts with North Carolina. For example, while plaintiff's initial choice of forum was given some weight in the court's venue analysis, it was weighed "less than it would if Plaintiff were a Pennsylvania

11

resident." Rouse, 2021 WL 254065, at *3.  In addition, while the location of the accident in some products liability cases is "relatively unimportant," this case is a notable exception where "the location of the accident is an especially relevant consideration," one which "absolutely matters." Id. at *4.  Furthermore, where the case now is being litigated in North Carolina, by virtue of the transfer of venue here, the location of the litigation itself further implicates North Carolina's interests to "eliminate tenuous claims involving older products for which evidence of defective conditions may be difficult to produce." Tetterton, 314 N.C. at 54.

On the other end of the balance, the court recognizes that the manufacture and assembly of the motorcycle in Pennsylvania is important to the causation element of part of plaintiff's claims. This element intersects with Pennsylvania's "interest in deterring the manufacture of defective products and in shifting the costs of injuries onto producers." Lacey, 932 F.2d at 188.  According to plaintiff, this interest extends to the "belie[f] that the interest in indefinitely protecting consumers from faulty products outweighs the interest in insulating manufacturers from lawsuits brought long after they produced the injurious product." (Pl's Mem. at 6) (quoting Alley v. MTD Prod., Inc., No. 3:17-CV-3, 2017 WL 6547996, at *3 (W.D. Pa. Dec. 20, 2017)).

Notably, however, the consumer interests discussed in Alley are consumer interests of residents of Pennsylvania.  Indeed, the court in Alley held that "Pennsylvania clearly has an interest in providing redress for Pennsylvania citizens injured by products they purchased and used within Pennsylvania." Alley, 2017 WL 6547996, at *3 (emphasis added).  Moreover, although not determinative to the court's analysis, the Third Circuit has observed "it does not appear that Pennsylvania adopted its strict products liability law to further its interest protecting the general public." Taylor v. Mooney Aircraft Corp., 265 F. App'x 87, 95 (3d Cir. 2008) (emphasis added).

Accordingly, while it is conceivable that Pennsylvania has an interest in protecting foreign citizens from products manufactured in Pennsylvania, that interest is not a strong interest stated in the law.

Additional cases cited by plaintiff do not serve to place the balance of interests in favor of Pennsylvania under the alleged circumstances of this case. Plaintiff again relies upon <u>Mitchell</u>, where the court opined: "there is no North Carolina manufacturer involved as a defendant in this lawsuit," and "[n]o compelling reason exists why the North Carolina legislature would have an interest in the application of its statute of repose to eliminate the claims of foreign plaintiffs against foreign defendants." 913 F.2d at 250. As noted, previously, however, <u>Mitchell</u> involved plaintiffs who were not North Carolina citizens, <u>id.</u> at 249, and the court did not fully describe North Carolina's interests in its statute of repose. <u>Id.</u> at 249-50. Moreover, the court determined that Texas had a greater interest in the claims, where the product was manufactured in Texas, and where "[t]he Texas legislature and courts have developed <u>an almost paternalistic interest</u> in the protection of consumers and the regulation of the conduct of manufacturers that have business operations in the state." <u>Id.</u> (emphasis added). The same cannot be said here both with respect to the residency of the plaintiff and with respect to the extent of state interests.

Plaintiff also cites <u>Lebegern v. Forman</u>, 471 F.3d 424, 433 (3d Cir. 2006), for the proposition that "[w]hen each state is interested in the application of its laws and the application of the foreign state's law would frustrate the purposes of the forum state, the presumption is to apply the law of the forum." In so stating, however, <u>Lebegern</u> is describing a New Jersey choice of law rule. <u>See id.</u> Under Pennsylvania choice of law rules, by contrast, "[i]n an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless . . . some other state has a <u>more significant relationship</u> . . . [to] the occurrence and the parties." <u>Blakesley</u>, 789 F.2d at 239 (emphasis added). Moreover, the court

13

Case 5:21-cv-00039-FL   Document 51   Filed 11/22/21   Page 13 of 17

in Lebegern did not address whether its "presumption . . . to apply the law of the forum" would still apply in circumstances of a change in venue. 471 F.3d at 433.

In sum, undertaking a "qualitative appraisal of the relevant States' policies with respect to the controversy," Hammersmith, 480 F.3d at 230, North Carolina has a stronger interest in application of its statute of repose under the circumstances of this case than Pennsylvania has in deterring the manufacture of defective products. Where "Pennsylvania choice-of-law rules call for the application of the law of the state having the most significant contacts or relationships with the particular issue," Budget Rent-A-Car Sys., Inc., 407 F.3d at 170, the court is compelled in this case to apply North Carolina substantive law to plaintiff's claims.

4. Application of Statute of Repose

As noted previously, North Carolina's statute of repose provides that "[n]o action for the recovery of damages for personal injury, death, or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than 12 years after the date of initial purchase for use or consumption." N.C. Gen. Stat. § 1-46.1(1). Before 2009, the statute in force provided a period of six years. N.C. Gen. Stat. § 1-50(a)(6) (1999); see 2009 North Carolina Laws S.L. 2009-420 (S.B. 882).

Because it is a "substantive . . . condition[] precedent to a cause of action," it is incumbent upon plaintiff to allege that his injury took place within the applicable statute of repose time period. Bolick, 306 N.C. at 371; see Robinson, 209 N.C. App. at 315. Here, regardless of whether a 12 year or a six year time period applies, plaintiff has failed to allege his injury took place within the applicable statute of repose time period. Therefore, plaintiff's claims must be dismissed as barred by the statute of repose.

14

Plaintiff does not dispute that the statute of repose, if it applies, bars most of plaintiff's claims. (See Pl's Resp. at 10). Instead, plaintiff argues that "[d]efendants are not entitled to dismissal of [p]laintiff's claims to the extent that they are premised on the instructions for use of the motorcycle propounded by [d]efendants after the initial sale of the motorcycle." (Id.). This argument is flawed in multiple respects.

First, the statute of repose broadly applies to "any action brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, <u>listing, certifying, warning, instructing, marketing, selling, advertising</u>, packaging or labeling of any product." Bernick v. Jurden, 306 N.C. 435, 446 n. 5 (1982) (emphasis added). Thus plaintiff's claims based upon inadequate instructions are not exempted from the requirements of the statute of repose.

Second, plaintiff does not allege facts regarding any instructions provided to plaintiff triggering a later commencement of the statute of repose. Plaintiff asserts, in his brief, for example, that "[w]hile it appears on the information currently available that the initial sale of the motorcycle in question occurred in 1999, there are open questions regarding when the subsequent warnings and instructions were propounded by Defendants and received by Plaintiff." (Pl's Mem. at 10-11). Assertions by counsel in a brief, however, are not allegations that must be credited on a motion to dismiss. In any event, open questions are not facts that give rise to a plausible inference that defendants provided warnings and instructions to plaintiff at any point in time.

Third, plaintiff does not allege that any instructions provided to plaintiff themselves constituted the initial sale of a product. In this respect, this case is instructively distinguishable from Driver v. Burlington Aviation, Inc., 110 N.C. App. 519, 528–29 (1993), which plaintiff relies

15

upon to support his instructions claim. There, the North Carolina Court of Appeals upheld a products liability claim based upon faulty instructions separate from claims for defective product for an aircraft. In so holding, the court reasoned that "the product to which the action applies is not the aircraft as [the defendant] suggests, but the instructional manual," and "[t]here are no allegations in plaintiffs' amended complaint contending that the aircraft was in any way defective." Id. at 528-529. Critically, the court reasoned, "[s]ince plaintiffs allege that the Informational Manual at issue was sold separately to the pilot, Neil Harris, the date of this sale is the crucial event triggering the statute of repose." Id. at 529 (emphasis added). In the instant case, plaintiff does not make any equivalent allegation that any instruction manual was sold separately to plaintiff or any operator of the motorcycle. Therefore, there is no basis for applying a more recent date than 1999 for triggering the statute of repose.

In sum, plaintiff's claims are barred by North Carolina's statute of repose. Thus, the complaint must be dismissed for failure to state a claim upon which relief can be granted.

5. Attorneys' Fees and Costs

Defendant Harley-Davidson seeks attorneys' fees and costs, pursuant to N.C. Gen. Stat. § 75-16.1, on the basis that it provided plaintiff's counsel with the governing statutes and case law and requested that plaintiff's counsel either dismiss the case or provide legal authority that he believes contradicts defendant Harley-Davidson's position. That provision allows the court, in its discretion, to direct payment of attorneys' fees to a prevailing party in any suit alleging a violation of § 75-1.1 (unfair and deceptive trade practices) if the "party instituting the action knew, or should have known, the action was frivolous and malicious." N.C. Gen. Stat. § 75-16.1(2).

Here, defendants have not demonstrated that plaintiff knew, or should have known, that the instant action was frivolous or malicious. To the contrary, plaintiff, through counsel, has

advanced arguments in favor of application of Pennsylvania law which, though unavailing, were reasonable and supported by citations to case law. Accordingly, attorneys' fees are not warranted under § 75-16.1, and defendants have not demonstrated any other basis for attorneys' fees or costs. Therefore, the court declines to award attorneys' fees and costs as requested by defendant Harley-Davison.

**CONCLUSION**

Based on the foregoing, the court GRANTS the motion to dismiss (DE 47) by defendant Harley-Davidson, construed as a motion to dismiss on behalf of all defendants. Plaintiff's action is DISMISSED for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). The clerk is DIRECTED to close the case.

SO ORDERED, this the 22nd day of November, 2021.

                                                      LOUISE W. FLANAGAN
                                                      United States District Judge